**IN THE UNITED STATES DISTRICT COURT**
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-1067-REB-CBS

WILLIAM R. CADORNA,

  Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, a municipal corporation,

  Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION AND SUPPORTING BRIEF FOR NEW TRIAL BECAUSE OF ATTORNEY MISCONDUCT**

---

Plaintiff, William R. Cadorna ("Plaintiff" or "Mr. Cadorna") hereby responds to the December 11, 2006 Motion and Supporting Brief for New Trial because of Attorney Misconduct filed by Defendant City and County of Denver ("Defendant", "Denver" or "City") pursuant to Fed.R.Civ.P. 59(a).

**Introduction**

In Draper v. Airco, Inc., 580 F.2d 91, 94 (3d Cir. 1978), the court emphasized "we do not expect advocacy to be devoid of passion." The challenge to Mr. Brennan's conduct during the trial fails to reveal the sort of "*ad hominem* disparagement of the adverse attorney and … client," McEnrue v. N.J. Transit Rail Operations, Inc., No. 90-4728 (JBS) 1993 (U.S. Dist. Lexis 15528 (D.N.J. Sept. 30, 1993) cited by Defendant. This is not the rare case where a new trial should be granted based on allegations of

1

attorney misconduct.  Cf. Minshall v. McGraw-Hill Broadcasting Co., Inc., 32 F.2d 1273, 1285 (10 Cir. 2003.)   Whether a new trial should be granted depends on whether the asserted errors affected the substantial rights of the parties, and the matter must be reviewed in the light most favorable to the non-moving party.  Courtney v. Safelite Glass Corp., 811 F. Supp. 1466, 1471 (D. Kan. 1992).

      This trial was tough and hard fought by both sides.  The court admonished counsel for both parties to follow the local rules, pretrial orders, and standards of conduct.  Even though Mr. Brennan's conduct may be criticized in some ways, many of the points Denver raises either could not have prejudiced the jury against it, occurred outside the presence of the jury, were not egregious, or were merely finishing a question which had been interrupted by an objection.   The totality of the circumstances show that it was the factual evidence of Denver's treatment of Mr. Cadorna, not egregious misconduct by Mr. Brennan, that produced the jury verdict so favorable to Mr. Cadorna.

      Indeed, Denver did not consider Mr. Brennan's conduct egregious until after the jury verdict had been returned.  Now, it focuses on "wretched little pieces" from the trial, trying to make them represent the flavor of the entire eight-day trial, to support its claim for a new trial.  See Koufakis v. Carvel, 425 F.2d 892, 904 (2d Cir. 1970).  Unlike counsel in Koufakis, Denver failed to object to many of the instances it now asserts were prejudicial.  Denver's failure to object, failure to move for judgment as a matter of law, and failure to move for a new trial pursuant to Fed.R.Civ.P. 50(a) before a verdict was returned constituted a waiver of their right to request a new trial under Fed.R.Civ.P.

2

50(b) or 59 on any bases not asserted before the jury was excused. Marshall v. Columbia Lea Regional Hosp., ___ F.3d ___, 2007 U.S. App. LEXIS 389, 8-11 (10th Cir. 2007)(No. 05-2173); United International Holdings v. Wharf Holdings, Ltd., 210 F.3d 1207, 1228-30; Anderson v. United Telephone Co., 933 F.2d 1500, 1503-04 (10th Cir. 1991.

    Denver's failures to object, failure to move for judgment as a matter of law, and failure to move for a new trial before the end of trial are also significant factors in the totality of the circumstances. Minshall v. McGraw-Hill Broadcasting Co., Inc., 323 F.3d 1273, 1285 (10 Cir. 2003). The Court properly upheld well-founded objections, and overruled those that were not. Denver does not challenge any of the rulings on its objections.

    For one instance of ungentlemanly conduct, which did occur outside the presence of the jury, Denver sought no sanctions. (Exhibit 1: Tr. 873: 19-22.) "The role of a trial judge should not be akin to that of schoolyard supervisor, and we perceive no flaw in the manner in which the able and patient trial judge dealt with this issue." Forrest v. Beloit Corp., 424 F.3d 344, 352 (3d Cir. 2005). The court appropriately addressed the conduct brought to its attention, ensuring the fairness of the trial. Denver implicitly concedes its failure to object, at Footnote 1, but an emphasis on fairness must include providing an opportunity for the court to address improprieties. In determining whether "there is a reasonable probability that the verdict of a jury has been influenced" by improper conduct, warranting that the verdict be set aside, a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the

comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e. g. whether it is a close case), and the verdict itself.  <u>Cleveland v. Peter Kiewit Sons' Co</u>., 624 F2d 749, 756 (6th Cir. 1980). Even after Mr. Brennan's rebuttal closing argument, which Denver now claims contained an error of law, Denver did not object, did not seek a curative jury instruction, and did not move for a mistrial.  <u>Cf</u>.  <u>Koufakis, supra</u>.  As a result, Mr. Cadorna asks the Court to determine that Mr. Brennan's conduct was not "pervasive, egregious misconduct" justifying awarding Denver a new trial.

**Argument**

**I.   Brennan's Zealous Advocacy did not Rise to the Level of "Pervasive Egregious Misconduct."**

Mr. Brennan advocated zealously for Mr. Cadorna in this trial.  Mr. Brennan was passionate in his examinations of witnesses and presentation of law to demonstrate how Mr. Cadorna had been wronged by the false charge of theft and termination of his employment.  The Court's handling of the trial, including addressing the conduct of all counsel, ensured the overall fairness of this trial.

Denver has mischaracterized Mr. Brennan's conduct in an effort to make it appear *mis*conduct, but during the trial Denver did not perceive much of it as misconduct warranting an objection or request for curative instructions.  Several of Denver's complaints address conduct outside the presence of the jury, which could not possibly have prejudiced the jury.   Some of the conduct complained of which did occur in the presence of the jury was minimal discourtesy, such as finishing a question to a

4

witness after an objection was made. Other conduct, such as asking multiple questions of a witness without allowing an answer, was more likely to annoy the jury than persuade it to agree with Mr. Brennan.

**A.     Denver Mischaracterizes Brennan's Conduct.**

In its effort to persuade this Court that Mr. Brennan's conduct was egregious and pervasive, Denver colorfully describes Mr. Brennan as "taunting," and "disrespectful." Mr. Brennan's words speak for themselves, and this Court, which observed all but the two incidents between counsel in the hall, is in the best position to determine whether these characterizations and the Court's handling of the incidents was appropriate.

In assessing the totality of the circumstances, the Court must consider the relevancy of the comments, how counsel and the Court handled them, and the overall strength of the case.

Here, there were numerous factual stipulations, in addition to stipulations of admissibility for many of the over one hundred exhibits. The factual stipulations alone present a substantial case that Mr. Cadorna was terminated on a pretext of shoplifting that had not been fully investigated by the Fire Department. The real issue before the jury was whether the shoplifting charge was a pretext for an illegally discriminatory discharge.

Denver asserts, with only three record cites, that Mr. Brennan deliberately set up an improper "us versus them" scenario. What Denver conveniently omits is that the remarks Mr. Brennan made about Safeway manager Michael Brown, Denver officials' handling of the shoplifting incident, and John Criswell's decision were all supported by

5

uncontroverted evidence. Mr. Brown confessed that he had found Mr. Cadorna's cookbook, cut out the page with Mr. Cadorna's name, and returned the book to the store shelf to be sold. The Fire Department officials admitted that they had not presented the initial witness statements to Safeway or Mr. Cadorna, and that they expected someone else to investigate the incident. The criminal charge was prosecuted without a thorough investigation. Mr. Criswell's decision did have a factual error in it. Mr. Brennan was fairly commenting on the evidence.

The three incidents that Denver cites all show that the Court admonished Mr. Brennan when he had crossed the line, including finding him in contempt. But what is more important is that the Court addressed these incidents even though Denver had failed to object. Denver should not be rewarded for its trial tactics after an adverse verdict was entered. Moreover, two of these incidents involved the jury being excused so as to ensure the neutrality of the trial. The Court's handling of these incidents was appropriate and preserved the fairness of the process.

**B.     Disparagement of Parties and Non-Parties was Based on Evidence.**

As discussed above, what Denver claims was prejudicial disparagement of parties and even non-parties was fairly based on the evidence. It was Safeway manager Michael Brown who did not reveal that Mr. Cadorna' cookbook had been found under circumstances that supported Mr. Cadorna's statement. Mr. Brown's false testimony prolonged Mr. Cadorna's ordeal until after he was compelled by the circumstances to apply for disability retirement.

Denver makes much of Mr. Brennan's regrettable out-of-court statements to Denver's counsel. However, the full context should be understood: Mr. Cadorna had been on the stand and clearly needed a recess to collect himself after testifying about the impact of the wrongful discriminatory discharge on his life. Mr. Brennan was following Mr. Cadorna in the hallway out of the presence of the jury to tell him to focus on what he needed to be doing when Denver's counsel admonished Mr. Brennan not to coach his witness. Under the stress of the moment, Mr. Brennan admittedly swore at Denver's counsel. When Denver's counsel brought this to the Court's attention, Mr. Brennan related the full incident and admitted his intemperate remarks.

Unlike the situation in McEnrue, supra at 17-27, where counsel engaged in unprovoked ongoing vulgarity and physical attacks, Mr. Brennan fell for the provocation and responded inappropriately. His apology was sincere, and this conduct did not recur.

But it could not have prejudiced the jury who were never aware of it.

Denver again repeats the "us versus them" scenario, without regard for the evidence to support Mr. Brennan's remarks about the shoddy investigation the Fire Department officials allowed to result in Mr. Cadorna's wrongful discharge. This was not egregious misconduct by Mr. Brennan, this was passionate advocacy for a man who had wrongfully lost the career he loved.

**C.     Appeals to Passion, or Sympathy are not Inherently Improper.**

It is only *improper* appeals to passion or prejudice of the jury that provide the basis for a new trial. Polansky v. CAN Ins. Co., 852 F.2d 626, 630 (1st Cir. 1988)

(Improper appeal to passion that injured parties could receive insurance benefits only if they found arson); Cleveland v. Peter Kiewit Sons' Co., 624 F2d 749, 756 (6th Cir. 1980) (mention of insurance when it was not an issue is unfairly prejudicial).

Again, Denver failed to object or ask for any curative instruction for the jury to what it now calls improper appeals to passion or prejudice.

### 1. Comparison to Americans who fought in WWII, Iraq and 9-11.

Here, Mr. Brennan made a short reference to soldiers and firefighters as individuals who choose careers that risk their lives and benefit the rest of society. He did not make them out to be martyrs, but individuals who are willing to risk much. Mr. Cadorna was a firefighter. This was fair advocacy, to evoke the type of person who was pursuing this discriminatory discharge. This was not an improper appeal to matters not at issue: the claims revolved around whether Mr. Cadorna should be reinstated as a firefighter or whether he had voluntarily retired.

### 2. James Turney

Denver cites a brief reference to James Turney as highly prejudicial, yet finds it necessary to add a footnote to explain who Mr. Turney is and why a reference to him was prejudicial. Mr. Brennan said that Mr. Turney was entitled to a presumption of innocence. (Exhibit 2: Tr. 1388: 10-14) When Denver did object to relevance the Court sustained it. These four lines, including the sustained objection, could hardly prejudice the jury.

### D. Testimonials

Not all improper remarks cause sufficient prejudice to warrant a new trial. It usually requires a combination of improper assertions to create a reasonable probability that a jury verdict has been influenced by prejudicial remarks. Fineman v. Armstrong World Industries, Inc., 980 F.2d 171, 207 (3d Cir. 1992). And, any improper remarks must be assessed in light of how the opposing counsel and the court handled them. Cleveland v. Peter Kiewit Sons' Co., supra. Denver's counsel engaged in some of the same conduct, and the Court appropriately admonished counsel for their conduct. It should be presumed that the jury followed the Court's instructions when it advised them to rely on the evidence rather than argument.

### 1.  Mr. Brennan's speechifying objections.

Denver cites five times that Mr. Brennan engaged in "speechifying" objections. The court sustained objections and admonished *both counsel* about their improper speechifying objections. (Exhibit 3: Tr. 277:17- 278:12; Exhibit 3a: Tr. 503:1-19). Denver's citation to the record has only two after the admonition, not the numerous occurrences suggested by its string citation. Considering the length of the trial – eight days, and the number of objections that were made throughout it by both sides, these five events do not have a cumulative prejudicial impact.

### 2.  Comments on testimony

As discussed above, not all improper comments may justify a new trial. In determining whether remarks may have been so egregious as to justify a new trial, the Court should consider how the comments were handled, and whether they go to a central issue, and the strength of the case. In making its determination on a new trial,

9

the Court must consider the evidence in the light most favorable to the non-moving party. Here, the record does show that Mr. Brennan did comment on the testimony of a witness and was ultimately sanctioned by termination of his cross-examination of a witness.

Mr. Cadorna has already paid a price for this conduct. The Court at the time of the trial fashioned a penalty suitable for Mr. Brennan's comments. At that time, Denver did not object that the penalty was too light, or ask for judgment as a matter of law. It should be presumed that the Court, at the time and weighing what it saw happening, was appropriate in its determination of how to handle this issue.

### E. Obfuscation of Record

Denver asserts that Mr. Brennan obfuscated the record by failing to allow witnesses to respond or by asking several questions so that it was unclear what was being asked or answered. Denver presents no authority, nor has counsel found any, that characterize this alleged discourtesy as egregious misconduct that incites the prejudice or passion of the jury. Indeed, it would seem more likely that a jury would be offended by this conduct rather than sympathetic to it.

### F. Improper Questioning

Although Denver cites authority that putting improper information before a jury may entitle the opposing party to a new trial, the examples it cites in this case reveal no improper information being put before the jury. Rather, its examples consist of: (1) addressing a witness incorrectly; (2) improperly asking a lay witness to comment on the testimony of another witness; and (3) asking a witness questions about an exhibit which

10

was not yet admitted. None of these, singly or cumulatively, presented improper information to the jury.

Addressing witnesses incorrectly was a matter of misspeaking or not using the appropriate formality. It did not convey any information.

Each time that a lay witness was asked to comment on testimony of another witness, the Court stopped any answer and directed Mr. Brennan that it was an improper question. Then, when Denver's counsel did the same thing, the Court advised him of "the sauce rule," that what is good for the goose is good for the gander. (Exhibit 4: Tr. 847: 14 – 848:5.) Denver should not complain of Mr. Brennan's conduct when it did the same. Again, no improper information was presented to the jury.

Finally, the error of asking a witness about an exhibit before it was admitted was consistently corrected by admission of the exhibit. Thus, no improper information was put before the jury. Denver's complaint on these bases is ungrounded.

### G. Continuing Questions After Objection

Denver's complaint that Mr. Brennan continued his questioning of witnesses after an objection was made again fails for lack of prejudice. Not only did the Court admonish Mr. Brennan for the impropriety, there is no indication that this conduct presented any improper information to the court or created sympathy for either Mr. Brennan or Mr. Cadorna. Even Denver does not argue that it did.

It is more likely that the jury was annoyed by this conduct than improperly induced to sympathize with it.

### H. Misstatement of Law

Finally, Denver complains that Mr. Brennan misstated the law in his rebuttal closing argument when it could not respond. First, whether it was a misstatement of law is answered in Mr. Cadorna's response to the Motion for Judgment as a Matter of Law.

Second, and more importantly, Denver has numerous ways it could have responded yet it failed to do so. It could have objected when the statement was made; it could have moved for judgment as a matter of law or for a new trial before a verdict was returned. It did none of these. See Minshall v. McGraw Hill Broadcasting Co., Inc., supra. Denver has made its strategic choices and should now live with them.

## II.     There is No Reasonable Probability that the Jury was swayed by Passion or Prejudice.

In determining whether "there is a reasonable probability that the verdict of a jury has been influenced" by improper conduct, warranting that the verdict be set aside, a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e. g. whether it is a close case), and the verdict itself. Cleveland v. Peter Kiewit Sons' Co., supra. The Court should review the record in the light most favorable to the non-moving party. Courtney v. Safelite Glass Corp., supra.

### A. Frequency

Denver asserts that the frequency of misconduct weighs in its favor. Yet, in order for the frequency to be significant, the acts of misconduct themselves should be

significant. Many of the incidents that Denver complains of are "wretched little pieces" blown out of context in an effort to make them meaningful. See Koufakis v. Carvel, supra. Even so, Denver's counsel engaged in similar conduct, with the Court commenting on "the sauce rule."

Denver chose to raise few objections to what it now characterizes as egregious, pervasive misconduct. Clearly, this was its trial strategy. It should not be permitted, in the absence of objections and motions for judgment as a matter of law or for a new trial before verdict, to object only after the Court has conducted an eight-day trial and the jury has returned its verdict. See Minshall v. McGraw Hill Broadcasting Co., Inc., supra; Cooper v. Firestone Tire and Rubber Co., 945 F.2d 1103 1107 (9th Cir. 1991).

### B. Nature of Conduct and Way it was Treated

Denver complains that Mr. Brennan's continuing misconduct makes it clear that it was prejudicial. Rather, the Court's direct involvement in the case, whether sustaining objections or directing Mr. Brennan to conduct himself appropriately, demonstrate that the Court was in control of the situation. As in Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442 (10 Cir. 1997), any alleged misconduct played a small role in the overall proceedings, and the Court handled the conduct appropriately so that the jury was not swayed by passion or prejudice. The Court was active in addressing the conduct of both counsel at every turn, ensuring a fair process in which each side had its opportunity to be heard.

Unlike the blatant, egregious conduct in some cases such as Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 284 (5th Cir. 1975) and Hopson v. Riverbay Corp., 190

F.R.D. 114 122 (S.D.N.Y. 1999), counsel did not attempt to introduce significant facts not in evidence, nor make numerous misstatements of fact to the jury.

### C.     Mr. Cadorna had a Strong Claim and Record Evidence of Willfulness

Denver asserts that Mr. Cadorna had a weak case, so the verdict in his favor had to be a result of passion and prejudice. In fact, Mr. Cadorna had a good case just on the stipulated facts. Combined with the evidence presented at trial, those facts established that the Fire Department's discharge of Mr. Cadorna was based on a pretext and was discriminatory.

The fact that this Court commented that the evidence of willfulness was "weak" does not equate to a finding that there is not record support for that jury finding. So long as there is evidence in the record to support the jury's findings they should be upheld. Loughridge v. Chiles Power Supply Co., Inc., 431 F.3d 1268, 1281 (10th Cir. 2005).

### D.     The Jury Inquiry about Fees was Neutral.

The City urges the court to look into the minds of the jury and find that the facially neutral question "May the jury award lawyers' fees?" is evidence that the jury had aligned with the plaintiff. Denver asserts that this neutral question is "powerful evidence" of prejudice in favor of Mr. Cadorna, citing Ballarini v. Clark Equipment Co., 841 F. Supp. 662, 667 (E.D. Pa. 1993) (jury inquiry whether the judge has the right to overrule/ or rule on its amount if it finds for plaintiff was evidence of cumulative impact of attorney misconduct). Apparently using a crystal ball, Denver continues its ungrounded presentation of the jury's collective thought process to urge that the verdict was an

impermissible padding resulting in an excessive award due to Mr. Brennan's improper conduct in persuading the jury to return a verdict for Mr. Cadorna.

Yet, as in <u>Yannacopoulos v. General Dynamics Corp.</u>, 75 F.3d 1298, 1304 (8th Cir. 1996), Denver neither objected to the query, the court's response, nor continued deliberations. It was only after an adverse verdict had been returned that Denver found grounds for claiming that the jury had been impermissible swayed by Mr. Brennan.

This Court, having observed Denver's choices of when to object and when not to, Denver's choice not to move for a mistrial, and Denver's choice to await a verdict before raising a challenge to Mr. Brennan's conduct, should find Denver is not entitled to a new trial.

## **Conclusion**

Mr. Cadorna requests the Court to deny the Motion for a New Trial based on Attorney Misconduct for the reasons set forth.

Respectfully submitted this 31st day of January, 2007.

                ANNE WHALEN GILL, LLC

                /s/ *Anne Whalen Gill*
                Anne Whalen Gill
                510 Wilcox Street, Suite C
                Castle Rock, CO 80104
                (303) 713-9050

                MARK E. BRENNAN, P.C.

                /s/ *Mark E. Brennan*
                P.O. Box 2556
                Centennial, CO 80161
                (303) 552-9394 or (303) 797-7687

                ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 31st day of January, 2007, a true and correct copy of the foregoing **RESPONSE TO MOTION AND SUPPORTING BRIEF FOR JUDGMENT AS A MATTER OF LAW** was served via the CM/ECF system to the following:

Richard P. Barkley, Esq.  
Hamid Khan, Esq.  
Brownstein Hyatt & Farber, P.C.  
410 17th Street, 22nd Floor  
Denver, Colorado 80202

Christopher M.A. Lujan, Esq.  
Assistant City Attorney, Litigation  
City and County of Denver  
201 West Colfax, Department 1108  
Denver, Colorado 80202

/s/ *Mark E. Brennan*