**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 04-cv-1067-REB-CBS

WILLIAM R. CADORNA,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, a municipal corporation,

      Defendant.
_____

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF FROM**
**JUDGMENT OF REINSTATEMENT AND RENEWED MOTION FOR STAY OF**
**JUDGMENT OF REINSTATEMENT (Docket No. 237)**
_____

      Plaintiff, William R. Cadorna ("Plaintiff" or "Mr. Cadorna") hereby responds to the

June 7, 2007 Motion for Relief from Judgment of Reinstatement Pursuant to

Fed.R.Civ.P. 60(b)(2) and 60(b)(6), and Renewed Motion for Stay of Judgment of

Reinstatement ("Motion", Docket Number 237) filed by Defendant City and County of

Denver ("Defendant" or "City"):

**I.**      **THE CITY HAS WAIVED ITS RIGHT TO DISPUTE THE TERMS OF, OR**
        **IMPOSE CONDITIONS UPON, PLAINTIFF'S REINSTATEMENT.**

      Defendant's motion is frivolously dilatory.  It was filed for the purposes of

oppression and delay.  It represents an attempt to re-litigate issues already decided by

this Court in Plaintiff's favor, or to raise issues Defendant failed to raise in a timely

fashion before, or after, trial or judgment.  Defendant unsuccessfully asserted prior to or

during trial the very "defenses" to liability or relief that it now asserts as specious

grounds for avoiding Plaintiff's reinstatement **one full year** after the jury's verdict and **seven months** after entry of judgment.

Prior to trial, Defendant relied heavily upon Plaintiff's hearing disability as grounds for avoiding liability.  On the one hand, it argued in its motion(s) for summary judgment (supported for the most part by precisely the same disability retirement application upon which it now relies—hardly "new evidence") that Plaintiff's disability retirement precluded liability under the ADEA.  On the other hand, it argued in its motion(s) for summary judgment that Plaintiff's hearing loss does not substantially impair him in the major life activity of working (as a firefighter or otherwise), and that his ADA claims must therefore be dismissed.   This Court declined to rule that Plaintiff's disability retirement precluded Defendant's liability under the ADEA, and permitted those claims to proceed to trial.  This Court agreed, however, that Plaintiff's hearing disability did not rise to the level of a disability within the meaning of the ADA, and dismissed Plaintiff's ADA claims prior to trial.

At trial, Defendant argued that it should be excused from its stated reliance upon Plaintiff's age to deny him reinstatement, because of its asserted additional reliance upon Plaintiff's disability retirement after his termination.  Obviously, the jury rejected this explanation, as meaningless in the face of Defendant's express reliance upon his age in refusing to reinstate him, and/or because it found this explanation to be a pretext for age discrimination.

Post-trial, Plaintiff moved for front pay in lieu of reinstatement because of his well-founded concern (now further reinforced by Defendant's Motion to bar his

reinstatement or damages in lieu of reinstatement) that Defendant is incapable of treating him fairly and lawfully in the event he returns to work.  In its August 7, 2006 Response to Plaintiff's Motion for Entry of Partial Judgment for Front Pay in Lieu of Reinstatement, Defendant stated its view that neither reinstatement nor front pay would be appropriate (page 1), and noted its intent "to file at least one post-judgment motion in the form of a renewed motion for judgment as a matter of law, or in the alternative, a new trial, in which it may present arguments concerning the issue of reinstatement, depending on what the judge ultimately orders." (Defendant's August 7, 2006 Response, page 2, footnote 1).   At the same time, Defendant insisted that Plaintiff should be required to accept reinstatement.  Defendant did not move that Plaintiff's reinstatement be conditioned upon a unilateral determination by Defendant, or physicians or other personnel in its employ, that Defendant is physically, psychologically, or otherwise fit to return to his work as a firefighter.  This Court granted Defendant's request, yet Defendant now seeks to avoid the very thing it demanded.

At no time prior to trial, nowhere in its August 7, 2006 Response, and at no time prior to this Court's November 27, 2006 Order granting judgment and ordering Plaintiff's reinstatement, did Defendant: (1) allege, attempt to litigate before this Court, or prove to the trier of fact, that Plaintiff is physically unfit for reinstatement; (2) move for the imposition of any conditions (such as a determination of fitness for duty by physicians or other personnel in Defendant's employ) upon Plaintiff's reinstatement.

Moreover, whereas Defendant attempted in its August 7, 2006 Response to preserve its right to object to Plaintiff's reinstatement post-judgment, and in its

December 11, 2006 Motion for Judgment as a Matter of Law argued that its refusal to reinstate Plaintiff was not a violation of the ADEA, Defendant failed to include any objection to Plaintiff's reinstatement on account of his hearing disability in its post-judgment motions, or to request in its post-judgment motions that this Court impose any conditions upon Plaintiff's reinstatement.

It is undisputed that, in full compliance with this Court's November 27, 2006 Order, Plaintiff notified Defendant in writing "on or before December 31, 2006" of his desire to be reinstated "as of the date of the jury's verdict on June 29, 2006, to the position, rank, salary, and benefits he enjoyed at the time of his unlawful termination". (November 27, 2006 Order, page 5, paragraph 9).  Plaintiff has fully complied with the sole condition upon his reinstatement imposed by this Court.  Yet, to this day, Plaintiff has neither been reinstated in accordance with this Court's November 27, 2006 Order, nor compensated for the earnings and benefits he has lost because of Defendant's contemptuous refusal to reinstate him retroactive to June 29, 2006.

Defendant's Motion is a transparent effort to escape the consequences of its previous failure to seek a stay on the equitable relief of reinstatement pursuant to Fed.R.Civ.P. 62(c).  Defendant seeks to avoid the consequences of its previous failure to raise this issue by pouring old wine into new bottles, and sophistically characterizing Plaintiff's reasonable reluctance to subject his hard-won reinstatement to Defendant's unbridled discretion as "newly discovered evidence which by due diligence could not have been discovered in time to move for new trial under Rule 59(b)".  Plaintiff's reluctance to grant Defendant discretion concerning his reinstatement is neither newly

discovered, nor evidence, and was in any event well known to Defendant long before the deadline for filing of post-judgment motions under Rule 59(b).

As Plaintiff has previously argued, Defendant only sought a stay on execution of the money damages component of this Court's judgment, and thereby waived its right to seek a stay on Plaintiff's reinstatement.  As Plaintiff has also argued previously, even if Defendant <u>had</u> sought a stay on the equitable relief of reinstatement, this Court would be required to deny a stay of reinstatement for the very important reasons upon which the court relied in <u>Dutton v. Johnson County Commissioners</u>, 884 F.Supp. 431, 434-35 (D.Kan. 1995).  Citing <u>EEOC v. Los Angeles County</u>, 531 F.Supp. 122 (C.D.Cal. 1982), for the proposition that "[a] denial of a plaintiff's rights under federal law, even if only during the pendency of appellate proceedings, constitutes a real and substantial injury to him", the court in <u>Dutton</u> denied a Rule 62(c) stay on reinstatement of a successful ADEA plaintiff.  *Id.*  See, also, <u>Hillman v U.S. Postal Service</u>, ___ F.Supp.2d ___, 2001 U.S. Dist. LEXIS 22409 (D.Kan. 2001)(also denying Rule 62(c) stay on reinstatement pending appeal in a discrimination case).

**II.    PLAINTIFF HAS NEVER REJECTED AN UNCONDITIONAL OFFER OF REINSTATEMENT.  EVEN IF HIS ACTIONS COULD BE CONSTRUED AS REJECTION, HIS REJECTION WAS REASONABLE.  DEFENDANT HAS THROUGH SUBTERFUGE ATTEMPTED TO DISGUISE ITS OWN DILATORY REFUSAL TO COMPLY WITH THIS COURT'S ORDER OF REINSTATEMENT AS THE CONSEQUENCE OF SOME MISCONDUCT BY PLAINTIFF.**

This Court's November 27, 2006 Order imposed no conditions upon Plaintiff's reinstatement, other than his submission of a written request for reinstatement.  Though

Plaintiff indisputably complied with that single condition upon his reinstatement, Defendant has never complied with, and is in contempt of, this Court's Order.

Instead, in its May 1, 2007 letter to the undersigned, Defendant made a **highly conditional "**offer" to reinstate Plaintiff. (Exh. D, Defendant's June 7, 2007 Motion). Defendant attempted to arrogate to itself full discretion to determine whether Plaintiff will be reinstated, after Plaintiff submits to a battery of medical and psychological tests conducted by physicians, psychologists, or other personnel or other entities highly vulnerable to undue influence by Defendant.

A discrimination plaintiff is not obligated to accept such a highly conditional offer of reinstatement prior to trial in mitigation of his damages, and may not be denied reinstatement or front pay after successful adjudication on the merits because he rejects such a highly conditional offer of reinstatement. Ford Motor Co. v. Equal Employment Opportunity Commission, 458 U.S. 219 (1982); Albert v. Smith's Food & Drug Centers, Inc., 356 F.2d 1242, 1253-54 (10th Cir. 2004); Giandonato v. Sybron Corp., 804 F.2d 120 (10th Cir. 1986); E.E.O.C. v Prudential Federal Sav. & Loan Ass'n, 763 F.2d 1166 (10th Cir. 1985); Graefenhain v Pabst Brewing Co., 870 F.2d 1198, 1204 (7th Cir. 1989); Herrera v. IBEW Local 68, 228 F.Supp.2d 1233, 1246 (D.Colo. 2002); Xiao-Yue-Gu v. Hughes STX Corp., 127 F.Supp.2d 751, 756-58 (D.Md. 2001)(plaintiff reasonably rejected post-judgment offer of reinstatement that was insufficiently definite and secure); Eichler v. Riddell, Inc., 961 F.Supp. 211, 212 (N.D. Ill. 1997)(successful plaintiff reasonably rejected "half-hearted offer of reinstatement post-judgment in lieu of front pay awarded by court); Fair v. Red Lion Inn, 943 P.2d 431 (Colo. 1997).

Defendant seeks to mislead this Court into believing that, prior to May 1, 2007, Plaintiff made no effort to be reinstated to his position, and that Defendant simply took the initiative to move Plaintiff's reinstatement along in the face of inaction by Plaintiff. Nothing could be less true.  Plaintiff's undersigned counsel has repeatedly requested or suggested in oral and written communications with Defendant's counsel that Defendant comply with its obligation to reinstate Plaintiff pending resolution of other issues, such as total damages and fees, by this Court.  [Exh. 1, attached, copies of April 18, 2007, February 2, 2007, January 8, 2007 (16:19) and January 8, 2007 (11:56) electronic mails from Plaintiff's counsel to Defendant's counsel].

In his communications with Defendant's counsel prior to May 1, 2007, Plaintiff's undersigned counsel made abundantly clear to Defendant's counsel that he would vigorously oppose any effort by Defendant to reserve to itself or to its minions the judgment whether Plaintiff may be reinstated.  Not until its May 1, 2007 letter to the undersigned did Defendant respond in any way to Plaintiff's repeated entreaties to be reinstated and fully compensated for additional lost earnings accrued since June 29, 2006.  Defendant sent its May 1, 2007 letter with full knowledge (indeed, undoubtedly with the full intent) that Plaintiff would deny Defendant's right to impose conditions of Defendant's choosing on Plaintiff's reinstatement.  Defendant could not have been surprised in the least by the undersigned's May 16, 2007 response[1] (Exh. E, Defendant's June 7, 2007 Motion), for it simply reiterated points of law or fact made in

---

[1] Delayed considerably by the death of the undersigned's father-in-law on May 1, 2007 and consequent extended absence from Colorado, thereafter.

previous oral or written communications concerning Defendant's obligation to reinstate Plaintiff.

It should be apparent to this Court, as it was to the undersigned, that Defendant's May 16, 2007 letter did not constitute a good faith effort by Defendant to comply with this Court's Order of reinstatement, but instead represented the first step in a characteristically devious scheme by Defendant to rely upon its minions in the medical or psychological professions[2] to provide it with a further pretext for retaliatorily refusing to reinstate or further compensate Plaintiff for his continued unemployment.

Were Defendant proceeding in good faith to serve the public interest, it would have immediately complied with the order of reinstatement, so as to minimize the accrual of additional damages.  In the event of demonstrated deficiencies in Mr. Cadorna's abilities or performance after his return to work, Defendant might subject him to scrutiny to the same extent such scrutiny would be permitted in the case of any similarly situated Denver Firefighter.  Of course, as Defendant knows quite well, it has in recent years been forced to abandon a number of physical strength and agility tests that it formerly used to harass Mr. Cadorna and other disfavored (particularly female) Firefighters, and is severely constrained in its ability to subject current Firefighters to involuntary medical, physical or psychological tests without risking well-founded charges of discrimination or retaliation.  Were it to reinstate Mr. Cadorna as required by this Court's November 27, 2006 Order, Defendant would as a practical matter lose its ability

---

[2] Who, one may suppose, are no less eager to please the City at the expense of their integrity than are its minions in the City Attorney's Office or Civil Service Commission.

to force his termination or retirement on the basis of some alleged physical, medical, or psychological deficiency.

Defendant therefore seeks its only practicable opportunity to foreclose Mr. Cadorna's further employment or accrual of damages by persuading this Court, through appeals to inchoate matters of "public policy" or "public safety", to permit it full, practically unfettered discretion to forestall Mr. Cadorna's reinstatement in reliance upon a fraudulent assessment by its minions (according to standards to which he was never before subject while employed as a Firefighter) that he is not fit to return to work.  In attempting to foreclose Mr. Cadorna's reinstatement, Defendant seeks permission to subject Mr. Cadorna to highly intrusive and invasive medical, physical and psychological screening to which it would not be allowed to subject Mr. Cadorna were he returning from FMLA leave or requesting accommodation under the ADA or Rehabilitation Act.

Were this Court to bless such a sham, Mr. Cadorna's ability to sue Defendant for disability discrimination or retaliation upon being refused reinstatement by Defendant would also be undermined severely.  That is Defendant's actual goal.  The extraordinary lengths to which Defendant has already gone to destroy Mr. Cadorna leave little doubt concerning its true intentions.

Were Defendant proceeding in good faith, it would not attempt to seize upon Mr. Cadorna's reliance upon mere hearing loss in his March 13, 2003 disability retirement application as grounds for seeking permission to subject him to highly intrusive and invasive medical, physical and psychological screening that would go far, far beyond what would be required to determine whether his hearing loss may impede his

functioning as a Firefighter.  Of course, Defendant knows quite well that Mr. Cadorna, and many other Firefighters, are able to perform their duties well notwithstanding such hearing loss, and that it would not be able to support denial of his reinstatement on the basis of his hearing loss alone. After all, until the day of his termination, he successfully performed the duties of a Denver Firefighter despite his hearing loss.

Were Defendant proceeding in good faith, it would not have responded to the undersigned's letter of May 16, 2007 with this Motion, in which it falsely alleges that Plaintiff "refused" reinstatement.  Plaintiff never rejected an unconditional offer of reinstatement.  In fact, Plaintiff simply expressed well-founded doubt, with reference to governing case law, that Defendant is entitled to impose conditions upon his reinstatement:

> 1.    It is well settled that anything less than an unconditional offer of reinstatement fails to toll the accrual of back pay.  In <u>Ford Motor Co. v. Equal Employment Opportunity Commission</u>, 458 U.S. 219, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982), the United States Supreme Court held that an employer who is charged with discrimination in hiring may toll the continuing of back pay damages by unconditionally offering the plaintiff the job that was previously denied.  In <u>Orzel v. City of Wauwatosa Fire Dep't</u>, 697 F.2d 743, 757 (7th Cir.), <u>cert. denied</u>, 464 U.S. 992, 104 S. Ct. 484, 78 L. Ed. 2d 680 (1983), the court held that, under the ADEA, it was not unreasonable for the plaintiff to believe that the defendant's reinstatement offer was not unconditional because it "was expressly conditioned upon [the plaintiff's] taking and passing a physical exam arranged by the [defendant]."  Reinstatement to restore the *status quo ante* after a jury verdict and final judgment of unlawful termination must *a fortiori* be unconditional.  To the extent it is not, back pay (or front pay, if you prefer) continues to accrue.

Defendant did not attempt to resolve its differences with Plaintiff concerning its right to impose conditions upon Plaintiff's reinstatement.   Defendant did not seek to negotiate

a more reasonable and defensible compromise position, such as certification by Plaintiff's personal physician that he meets the stated requirements of the position of Denver Firefighter.[3]   Defendant completely ignored Plaintiff's reasonable inquiry concerning its intent to make Plaintiff whole for unpaid wages and benefits retroactive to June 29, 2006, and expression of concern that the position offered is materially quite different from the position Plaintiff occupied before his termination.  Defendant simply filed its Motion on the spurious ground that Plaintiff's refusal to comply with the conditions it imposed on his reinstatement forecloses his reinstatement or, in the alternative, accrual of back and front pay.  Even if Defendant's offer of reinstatement were unconditional, Plaintiff's alleged rejection of it would be reasonable because of Defendant's complete lack of good faith and Defendant's failure to address Plaintiff's quite legitimate concerns with respect to the position offered.  This is not a case in which a plaintiff has unreasonably rejected an unconditional offer of reinstatement for personal reasons that cannot be blamed upon the defendant.  *Cf.* Stanfield v. Answering Service, Inc., 867 F.2d 1290, 1295 (11th Cir. 1989).

## III.   THE ADA CASES CITED BY DEFENDANT ARE NOT CONTROLLING, AND IN ANY EVENT ESTABLISH A PRESUMPTION IN FAVOR OF REINSTATEMENT THAT DEFENDANT HAS FAILED TO OVERCOME.

Defendant cites two Eighth Circuit ADA decisions, Thomlison v. City of Omaha, 63 F.3d 786 (8th Cir. 1995) and Doane v. City of Omaha, 115 F.3d 624 (8th Cir. 1997), to support its position that, at this late date, well after this case has been litigated to verdict and judgment, it may oppose Plaintiff's reinstatement, or further accrual of back or front

---

[3] Plaintiff, in acknowledging the possibility that some reasonable compromise position might exist, does not for a moment mean to waive his objection to the imposition of any conditions on his reinstatement.

pay in lieu of reinstatement, until he submits to extensive medical, psychological and physical screening by Defendant to determine his fitness for duty.

These ADA cases from another jurisdiction are not controlling, and are in any event highly distinguishable.  Moreover, far from validating Defendant's position, they severely undermine it, for they establish a strong presumption in favor of reinstatement of an ADA plaintiff that a defendant must overcome by persuasive evidence that a plaintiff's disability constitutes a special circumstance requiring additional examination or inquiry before reinstatement may occur.

In both <u>Thomlison</u> and <u>Doane</u>, the plaintiff's disability was central to the litigation, and its nature and extent were **fully adjudicated at trial**.  The trial and appellate courts in both cases had available to them a well-developed record concerning the disabilities in question, and the extent to which they might or might not prevent performance of the essential functions of the duties of a firefighter by a woman with foot and back trouble (<u>Thomlison</u>), or the duties of a policeman by a man who had successfully performed the duties of a policeman for nine years despite his complete blindness in one eye (<u>Doane</u>). In neither case did the court hold that the plaintiff was absolutely foreclosed from reinstatement, or further accrual of back or front pay, by virtue of his or her disability.  In <u>Thomlison</u>, the court reversed and remanded for a determination of the plaintiff's fitness to perform the essential functions of a firefighter.  In doing so, the court stated:

> We emphasize that the City retains the burden of demonstrating that Thomlison is unfit.  If she does not currently possess the physical fitness necessary to perform firefighting duties, however, the district court may want to grant front pay or permit a provisional reinstatement conditioned on Thomlison obtaining the required level of fitness within a specified period of time.

63 F.3d at 790.   In <u>Doane</u>, the court upheld the district court's refusal to deny the plaintiff reinstatement because of the city's failure to overcome the presumption that the plaintiff was able to perform the essential functions of a policeman, as he had successfully performed the duties of a policeman for nine years despite his blindness in one eye.  If anything, <u>Doane</u> stands for the proposition that, given the undisputed evidence that Plaintiff successfully performed the essential duties of a Denver Firefighter despite his hearing loss, he is entitled to the presumption, which Defendant has failed to overcome, that he is still capable of performing those duties and must be reinstated forthwith.

**IV.  DEFENDANT'S POSITION AMOUNTS TO AN UNSUPPORTABLE "DIRECT THREAT" AFFIRMATIVE DEFENSE UNDER THE ADA THAT IT HAS NEVER BEFORE ASSERTED OR PROVED, AND HAS THEREFORE WAIVED.**

Though it goes to great lengths to avoid saying so, Defendant's assertion that it should not be required to reinstate Plaintiff, or pay him additional back or front pay in lieu of reinstatement, amounts to assertion of the very narrowly drawn "direct threat" defense first established in cases decided under the Rehabilitation Act, e.g., <u>School Board of Nassau County v. Arline</u>, 480 U.S. 273 (1987) and later codified in the ADA, at 42 U.S.C. §12111(3), as a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation".  "Congress chose to allow an employer to exclude or limit an employee on this basis, but only if the employer can demonstrate that the actual risk associated with the individual applicant or employee is significant, in light of current medical and scientific knowledge, and cannot be eliminated by reasonable accommodations.  If the individual with a disability presents only a

speculative or remote risk of harming another, the employer must bear that risk, in order

to open doors to the employment of individuals with disabilities and give them the

chance to demonstrate safe and productive job performance.  Similarly, if the risk

associated with the individual's disability can be eliminated by reasonable

accommodations, the employer must provide those accommodations, so long as doing

so does not impose an undue hardship on the employer."  *Understanding and*

*Implementing the ADA's Direct Threat Defense*, Assoc. Prof. Ann Hubbard, 95

Northwestern Univ. L. Rev. 1279, 1297 (2001).  Because Defendant has never before in

this litigation interposed or proved this affirmative defense to Plaintiff's reinstatement, it

must be deemed waived.

## V.    CONCLUSION

Plaintiff has never rejected an unconditional offer of reinstatement.  Though it lost

this case, Defendant still seeks to have the upper hand, and reserve to itself virtually

unbridled discretion to deny Plaintiff his hard-won reinstatement.  Plaintiff is ready,

willing and able to demonstrate his fitness to perform the duties of a Denver Firefighter

without further delay, by returning to his former position immediately, free from any

interference by Defendant.  If, in its wisdom, this honorable Court determines that

Plaintiff should, despite Defendant's failure to timely request it, reasonably submit

medical certification that he is fit to perform the duties of a Denver Firefighter as a

condition of reinstatement, Plaintiff most respectfully requests that this Court permit him

to obtain such certification from a physician of his sole choosing, who is in no way

affiliated with, under contract with, or otherwise subject to the undue influence of, the

City and County of Denver.  Moreover, even in the event Plaintiff is not certified to perform the duties of a Denver Firefighter, Plaintiff respectfully requests that this Court order Defendant to pay him back pay retroactive to June 29, 2006, and front pay until such time as he obtains such medical certification or he reaches the mandatory retirement age of 65.

WHEREFORE, for the reasons set forth above, this Court should DENY the City's Motion for Relief from Judgment of Reinstatement and Renewed Motion for Stay of Judgment of Reinstatement.

Respectfully submitted this 27th day of June, 2007.

MARK E. BRENNAN, P.C.

/s/ *Mark E. Brennan*

P.O. Box 2556
Centennial, CO 80161
(303) 552-9394 or (303) 797-7687

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 27th day of June, 2007, a true and correct copy of the foregoing **RESPONSE TO DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT OF REINSTATEMENT AND RENEWED MOTION FOR STAY OF JUDGMENT OF REINSTATEMENT** was served via the CM/ECF system on the following:

Christopher M.A. Lujan
Frank Nachman
Assistant City Attorneys, Litigation Section
City and County of Denver
201 West Colfax, Department 1108
Denver, Colorado 80202

/s/ *Mark E. Brennan*

## **EXHIBIT 1**

Plaintiff's Resp. to Motion for Relief from
Judgment of Reinstatement
Cadorna v. City, 04-cv-01067-REB-CBS

 **MAIL**                                                        Print - Close Window

| | |
|---|---|
| **Date:** | Wed, 18 Apr 2007 09:29:11 -0700 (PDT) |
| **From:** | "Mark Brennan" <markebrennanpc@yahoo.com> |
| **Subject:** | Settlement issues |
| **To:** | "Chris M. Lujan" <chris.lujan@ci.denver.co.us> |

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

Hi, Chris:

Regrettably, questions concerning the extent of the City's willingness to fulfill at least part of its "baseline" (that is, undisputed) obligations to Mr. Cadorna prevent me from proposing anything firm with respect to settlement of the attorney's fees at this time.

The best I can say at this particular juncture is that I would encourage Mr. Cadorna to consider something resembling a "structured settlement" or "installment plan" with respect to both his damages and my [our] fees. There would be tax advantages for us both, and considerable budgetary advantages for the City.

I think it makes sense for both sides to try to accomplish what they can to set aside disputes concerning reinstatement, the undisputed damages owed, and attorney's fees, and leave the rest to be resolved by the court(s) over time.

The only issue about which there remains any meaningful or arguable question of liability is with respect to the damages above and beyond the amount you do not dispute the City would have to pay (assuming the verdict of liability is upheld, which it will inevitably be).

Obviously, it makes no sense for the City to be accruing liability for a substantial stream of income from Mr. Cadorna's reinstatement retroactive to 6/29/06, plus interest, without receiving the benefit of his services in some fashion.  We will most certainly oppose any effort by the City to impose conditions or restrictions of any kind on his reinstatement. None is permitted by law, or by the Court's order.  Bill must be returned to the *status quo ante*, as though his unlawful termination never occurred.

If the City prefers to pay Bill his salary and benefits in lieu of his returning to the fire house, without regard to the pension he is already receiving, I doubt anyone would oppose that, for obvious reasons.

Thanks!
Mark Brennan



**THIS EMAIL MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION THAT IS INTENDED SOLELY FOR THE RECIPIENT NAMED ABOVE.  UNAUTHORIZED USE IS PROHIBITED.**

Mark E. Brennan, P.C.
Attorney-at-Law
P.O. Box 2556
Centennial, Colorado 80161-2556
(303) 552-9394 (office)
(303) 797-7687 (cell)
(303) 734-9156 (fax)

 **MAIL**

Print - Close Window

**Date:** Fri, 2 Feb 2007 11:33:32 -0800 (PST)

**From:** "Mark Brennan" <markebrennanpc@yahoo.com>

**Subject:** Resolution with respect to stay of execution and bond

**To:** "Richard Barkley" <rbarkley@bhfs.com>

**CC:** "Chris M. Lujan" <chris.lujan@ci.denver.co.us>, "Bill Cadorna" <bcatlantian@msn.com>

Dear Richard:

As I indicated in a voice mail I left for you a few minutes ago, Mr. Cadorna has authorized me to extend the following alternative as a means of addressing our mutual concerns with respect to the issues raised by your pending motion to stay execution and post a supersedeas bond:

We will stipulate to a stay of execution and waiver of supersedeas bond pending the outcome of post-trial motions and appeals if:

(1) the City will pay Mr. Cadorna the full salary, plus all benefits of any kind to which he would have been entitled thereupon, or thereafter, he would have received had he been reinstated full-time retroactive to June 29, 2006, with NO OFFSET for the collateral source of his pension, as though he had never been terminated, with years of service for all purposes going back to his original date of hire in 1976 intact/restored;

(2) the City will, until all appeals/remands, etc., are exhausted and resolved, pay Mr. Cadorna the full salary, plus all benefits of any kind to which he is now or would later be entitled had he been reinstated retroactive to June 29, 2006, with NO OFFSET for the collateral source of his pension, as though he had never been terminated, with years of service for all purposes going back to his original date of hire in 1976 intact;

(3) the foregoing would in no way be in derogation of, or used as a pretext for reducing or eliminating, Mr. Cadorna's current disability retirement annuity payments.

Since there is no possibility that the City will avoid reinstatement, yet the City hopes to reduce the back pay/liquidated damages, this would seem to be a fair approach.

Obviously, I would prefer to have your answer early this afternoon, so as to avoid the necessity of spending a couple of thousand bucks (of the City's money, after all) responding to your motion.

If that is not possible, we might succeed in a stipulation to extend pending negotiations, though Judge Blackburn seems to take a dim view of that practice.

In any event, we could still talk pending the Court's determination.

You may reach me at my office number of (303) 552-9394 or cell number of (303) 797-7687.

Thank you for your continuing courtesy and cooperation.

Best regards,
Mark Brennan


**THIS EMAIL MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION THAT IS INTENDED SOLELY FOR THE RECIPIENT NAMED ABOVE. UNAUTHORIZED USE IS PROHIBITED.**

Mark E. Brennan, P.C.
Attorney-at-Law
P.O. Box 2556
Centennial, Colorado 80161-2556
(303) 552-9394 (office)
(303) 797-7687 (cell)

 **YAHOO!** MAIL                                               Print - Close Window

**Date:**     Mon, 8 Jan 2007 16:19:57 -0800 (PST)

**From:**     "Mark Brennan" <markebrennanpc@yahoo.com>

**Subject:**  Supersedeas Bond Forbearance

**To:**       "Richard Barkley" <rbarkley@bhfs.com>, "Chris M. Lujan" <chris.lujan@ci.denver.co.us>

**CC:**       "Bill Cadorna" <bcatlantian@msn.com>

## CONFIDENTIAL SETTLEMENT COMMUNICATION UNDER FED.R.EVID. 408

Dear Richard and Chris:

I think it will benefit both parties to have a couple of days in which to ponder or discuss possible ways in which to achieve our mutual goals.

Therefore, as you proposed in your second letter of today (copy attached) Mr. Cadorna is willing to forbear enforcement of the judgment until the close of business on Wednesday, January 10, 2007, in order to permit you an opportunity to discuss ways in which the City might make it worth Mr. Cadorna's while to waive the posting of a *supersedeas* bond, which he will refuse absent very meaningful consideration that at least partially repairs the severe economic harm the City's actions have caused him.

I must emphasize that I am not authorized to make any proposal of compromise on this issue, and am not making an offer of compromise.

Mr. Cadorna has quite vehemently instructed me to refuse to waive the bond. In the spirit of comity, I will not share his precise response to your proposal with you.

It occurs to me, however, that there is a significant component of the judgment about which we do not disagree, and which your client will in all likelihood have to satisfy regardless of whether it succeeds in persuading Judge Blackburn to reduce the judgment: (1) that portion of back pay you do not dispute he is owed, though we obviously differ greatly on the total amount; (2) reinstatement; (3) attorney's fees, though you will undoubtedly insist upon a lower hourly rate than the $330 Judge Kane recently awarded in Lucas v. Kmart.

By way of "thinking out loud", I wonder whether there may be some way in which your client would be willing to satisfy that part of the judgment and attorney's fees about which there is no dispute, and leave the rest (e.g., total attorney's fees, liquidated damages, back pay above and beyond what you concede is due) to be fought over in the post-trial motions/appeals, etc.?

If I were in a position to offer some reasonable *quid pro quo* for his forbearance on the supersedeas bond, above and beyond your agreement to pay the full judgment after exhaustion of appeals (which, after all, profits him very little), Mr. Cadorna might take your proposal much more seriously.

I frankly do not know whether such an approach is even legally practical or feasible. I have not myself thought through all of the pros and cons from our perspective, completely.

Also, It may well be that your client would not regard it as an option superior to simply posting the bond. It may suffer the illusion that it will, by holding out on paying anything, gain pressure with which it might later compel Mr. Cadorna to accept less than whatever the full judgment turns out to be in settlement. Please be assured the latter will fail. (Though my experience in handling this case over the last three years did little to improve my temperament or manners, it taught both Mr. Cadorna and me that patience and perseverance are occasionally rewarded in this life.)

I would, however, be happy to communicate any proposal to Mr. Cadorna that you, given the benefit of your far superior knowledge of appellate procedure, might formulate to help us achieve our mutual goals.

Thank you very much for your courtesy and cooperation.

Best regards,

Mark Brennan


**THIS EMAIL MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION THAT IS INTENDED SOLELY FOR THE RECIPIENT NAMED ABOVE.  UNAUTHORIZED USE IS PROHIBITED.**

Mark E. Brennan, P.C.
Attorney-at-Law
P.O. Box 2556
Centennial, Colorado 80161-2556
(303) 552-9394 (office)
(303) 797-7687 (cell)
(303) 734-9156 (fax)

 **YAHOO! MAIL**                                      Print - Close Window

**Date:**   Mon, 8 Jan 2007 11:56:03 -0800 (PST)

**From:**   "Mark Brennan" <markebrennanpc@yahoo.com>

**Subject:**  Supersedeas Bond

**To:**     "Richard Barkley" <rbarkley@bhf-law.com>, "Chris M. Lujan" <chris.lujan@ci.denver.co.us>

**CC:**     "Bill Cadorna" <bcatlantian@msn.com>

Dear Richard and Chris:

I hope this finds both of you enjoying a very Happy New Year, as well.

I have received your letter (copy attached) requesting our agreement to waiver of posting of a supersedeas bond pending the outcome of all post-trial motions and appeals, and will discuss its implications with Mr. Cadorna.

On the face of it, I would be inclined to recommend against such an agreement.  I can think of no advantage our agreement to it would offer Mr. Cadorna, and think opposing it would be to his great advantage.

Nevertheless, it is obviously a very important decision that must be made upon the basis of all relevant information.

What is your client's position concerning Mr. Cadorna's reinstatement, ordered by the court in its 11/27/06 Order and 11/28/06 Judgment, and requested in writing by Mr. Cadorna via email on 12/31/06 (not to mention many times prior to that date in his complaint, etc.)?

Thank you.

Best regards,
Mark Brennan


**THIS EMAIL MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION THAT IS INTENDED SOLELY FOR THE RECIPIENT NAMED ABOVE.  UNAUTHORIZED USE IS PROHIBITED.**

Mark E. Brennan, P.C.
Attorney-at-Law
P.O. Box 2556
Centennial, Colorado 80161-2556
(303) 552-9394 (office)
(303) 797-7687 (cell)
(303) 734-9156 (fax)


**Attachments**

**Files:**

📎 **Cadorna.PostTrial.DefLtrReBond.1.8.07.pdf** (50k)