**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No.  04-cv-01067-REB-CBS

WILLIAM R. CADORNA,

      Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, COLORADO, a municipal corporation,

      Defendant.

---

**ORDER GRANTING MOTION FOR NEW TRIAL**
**BECAUSE OF ATTORNEY MISCONDUCT**

---

**Blackburn, J.**

      The matter before me is defendant's **Motion and Supporting Brief for New Trial Because of Attorney Misconduct** [#209], filed December 11, 2006.  I grant the motion.

**I.  JURISDICTION**

      I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

**II.  STANDARD OF REVIEW**

      When a case has been tried to a jury, a new trial may be granted "for any of the reasons for which new trial have heretofore been granted in actions at law in the courts of the United States." **FED.R.CIV.P.** 59(a)(1).  "Conduct of counsel ordinarily is not grounds for reversal, unless such conduct substantially influences the verdict or denies the defendant a fair trial." ***Hoops v. Watermelon City Trucking, Inc.***, 846 F.2d 637,

641 (10th Cir. 1988) (citation and internal quotation marks omitted); **see also Mason v. Oklahoma Turnpike Authority**, 115 F.3d 1442, 1456 (10th Cir. 1997).  In analyzing whether counsel's conduct was unfairly prejudicial, I consider "the totality of the circumstances, including the nature of the comments, their frequency, their possible relevance to the real issue before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g., whether it is a close case), and the verdict itself." **City of Cleveland v. Peter Kiewit Sons' Co.**, 624 F.2d 749, 756 (6th Cir. 1980); **see also Hopson v. Riverbay Corp.**, 190 F.R.D. 114, 122 (S.D.N.Y. 1999).  The decision whether misconduct of trial counsel has been so egregious to require a new trial is committed to the broad discretion of the court. **Angelo v. Armstrong World Industries, Inc.**, 11 F.3d 957, 962 (10th Cir. 1993); **Polson v. Davis**, 895 F.2d 705, 711 (10th Cir. 1990).

### III.  ANALYSIS

"The single most important task of a district judge presiding at a trial before a jury is to exercise that degree of control required by the facts and circumstances of each case to assure the litigants of a fair trial." **Koufakis v. Carvel**, 425 F.2d 892, 900 (2nd Cir. 1970) (citation and internal quotation marks omitted).  During the eight days of trial in this matter, I exerted my best efforts to control the courtroom behavior of plaintiff's counsel, Mark Brennan.  I must admit that I was not adequately prepared for the task.[1]  Even now, some fifteen months after the trial, my recollection of Mr.

---

[1]  I am chagrined that despite my continuing best efforts, the proverbial sideshow inexorably consumed the circus.

Brennan's conduct during the trial is preternaturally vivid, since in over nineteen years on the bench, I have seen nothing comparable.  Such disrespectful cockalorum, grandstanding, bombast, bullying, and hyperbole as Mr. Brennan exhibited throughout the trial are quite beyond my experience as a jurist, and, I fervently hope, will remain an aberration during the remainder of my time on the bench.  Short of declaring a mistrial or incarcerating counsel for contempt of court, I exhausted the traditional means to conform Mr. Brennan's conduct to the minimum required for practitioners in federal court.  I am firmly convinced that Mr. Brennan's misconduct, far from vindicating the cause of justice that he clearly conceived himself as championing, in fact, perverted that cause by prejudicing the jury's verdict and denying the defendant a fair trial. Accordingly, a new trial is required.

Defendant has catalogued more than 80 separate incidents of misconduct by Mr. Brennan.  Although I do not agree that all of these discreet instances or categories were objectionable, let alone prejudicial, many were.  Sadly, many others also served to undermine the orderly search for truth in this case.

The first harbinger of potential trouble came during the examination of the very first witness.  Mr. Brennan, apparently unaware that he was not conducting a deposition, continued to question the witness after an objection had been interposed but before I could invite a response and utter a ruling.  (Tr. 154.)  The same thing occurred again during Mr. Brennan's examination of the second witness.  (Tr. 206-207.) By the fourth day of trial, the instances in which Mr. Brennan proceeded disrespectfully and improperly with his examination despite the pendency of an objection had become

3

so numerous that I was required to call a bench conference to admonish him.  Yet with his very next question, Mr. Brennan once again improperly ignored defendant's objection and continued his questioning, never bothering to pause for the court's participation.  (Tr. 761-763.)

Although these instances, which are merely illustrative of a disturbing pattern of habitual misconduct that continued throughout the trial and even into closing argument (*see* Tr. 1616), evinced a profound disrespect for the court's authority to control the proceedings, they were not merely rude and inconsiderate.  To repeatedly proceed insouciantly with the examination of a witness in the face of a pending objection as if the sitting trial judge were completely irrelevant to the process gives the jury a distorted sense of the court's and counsel's respective roles.  Moreover, the fact that Mr. Brennan continued to transgress this same boundary of proper and orderly trial procedure, despite my repeated admonitions to desist, strongly suggests that his behavior was neither inadvertent nor unintentional.

In a similar vein, Mr. Brennan repeatedly interjected inappropriate – ofttimes mordaciously sarcastic – editorial comments into the record, both in questioning witnesses and in lodging objections.[2]  Occasionally, such rhetorical flourishes may have a place in a trial, but they are never properly interposed during the presentation of the evidence, *a fortiori*, during the examination of a witness.  Despite ingravescent

---

[2] Although counsel for both parties were guilty of speechifying their objections, despite the admonition of my Trial Preparation Conference Order to avoid the practice, defense counsel at least made an effort to conform their conduct to my requirements after their transgression was noted.  Mr. Brennan, by contrast, remained recalcitrant in this respect throughout the trial.

remonstrations from the court, Mr. Brennan persisted unregenerately in this highly improper and prejudicial practice.  On the third day of trial, the following exchange occurred during Mr. Brennan's examination of witness Joe Hart concerning whether plaintiff was wearing his uniform on the day of the incident that lead to his termination:

> Q:  Fair enough.  So to this day, you really have no idea whether he was in uniform or not, do you?
> A:  No.
> Q:  But of course when you went to meet with Kevin McKee and Michael Brown you were wearing on what you have on today pretty much, weren't you?
> A:  Pretty much.
> Q:  Very impressive uniform. Very handsome fellow. You cut a fine figure.  Now, you walked in the store –
> MR. WESOKY:  Your Honor, I must object again.
> MR. BRENNAN:  I am just complimenting the man.

(Tr. 406-407.)  Since it was clear from the sarcastic tone of Mr. Brennan's comment that he had not, in fact, intended to compliment the witness, I immediately called a recess and specifically warned Mr. Brennan again that such personal attacks would no longer be tolerated.[3]

---

[3]  Specifically, I advised Mr. Brennan:

> Mr. Brennan, despite my reiterated admonitions, you continue to sprinkle unsolicited editorial comments as a part of your putative examination of this and other witnesses.
>
> As a result, that has caused delay, interruption in these proceedings, to the detriment of the jury, the court, and to the parties and their counsel.
>
> Mr. Brennan, enough is enough.  You are going to have to find it within your power to resist what apparently is the almost irresistible to comment editorially as you conduct examination during the trial of this case.
>
> And no longer will you be able, regardless of how well intended your remarks are, to compliment a witness as he or she testifies.

This admonition did little to curtail Mr. Brennan's *ad hominem* commentary.  If anything, his editorializing grew progressively worse.  Indeed, Mr. Brennan interposed yet another improper editorial comment shortly after my remonstration.  (Tr. 622.)  His recusant practice continued unabated.  (***See, e.g.***, Tr. 633, 820, 821, 826, 830, 838, 1043, 1052, 1250, 1254, 1301-1302, 1316, 1318-1319, 1320, 1381, 1386-1387.)  Finally, I issued what I characterized as a "last warning," admonishing Mr. Brennan that I would terminate cross-examination if the editorial comments continued.  (Tr. 1390-1391).  Even then, he made several more remarks that skirted the line, to which I sustained defendant's objections.  (Tr. 1405, 1422, 1428, 1429-1430).  The *coup de grâce*, however, came when, regarding the witness's response, Mr. Brennan asserted sardonically, "There is a straight answer."  (Tr. 1436.)  I immediately excused the jury and terminated the cross-examination.  (Tr. 1436-1437.)  Incredibly, it took several more minutes and five verbal orders for me to persuade Mr. Brennan, under threat of contempt of court, to clear the podium and resume his seat, as he attempted disaffectedly to argue the merits of my ruling.  (Tr. 1437-1441.)  Soon thereafter, following a bench conference at which Mr. Brennan again repeatedly interrupted me despite my specific instructions to desist, I found him in contempt of court and fined him $500.  (Tr. 1458-1461.)  (***See*** **Order of Contempt** [#165], filed July 12, 2007.)

Nor were Mr. Brennan's repeated attempts to argue the merits of my rulings or

---

Both of those practices are unacceptable and inappropriate in the trial of this action.  Please exert your best efforts now, under pain and penalty of contempt of court, to conform your conduct to the simple requirements of this court.  Thank you.

(Tr. 607-608.)

have the final word confined to bench conferences.[4]  When I attempted to make Mr.

Brennan conform to the rules of evidence by preventing him from reading from a

document that had not yet been admitted, the following exchange occurred:

> THE COURT: It is inappropriate --
> MR. BRENNAN: Very well.
> THE COURT: -- and improper -- let me finish, please, if I could.
> MR. BRENNAN: I crossed --
> THE COURT: It's more than that, Mr. Brennan, it's just a
> matter of good old-fashioned fairness and courtesy, not only
> to the court but to another human being.  So it's more than
> me just being the boss.  Yesterday we plowed this ground.  I
> am going to plow it again, apparently.  It's inappropriate to
> read from a document not yet admitted in evidence.
> MR. BRENNAN: I will do my best to comply with your admonition,
> your Honor.
> THE COURT: Thank you.  I will help you.
> MR. BRENNAN: I wonder if the jury should be hearing this
> kind of remonstration all the time which I think has a
> tendency to prejudice them against me.
> THE COURT: Well, that's --
> MR. BRENNAN: Because you are in essence passing
> judgment upon my competence as an attorney in their
> presence.
> THE COURT: You are doing that now in the presence of the jury.

(Tr. 430-431.)  I then was required to excuse the jury to privately admonish Mr.

Brennan.  (Tr. 431-432.)  His oleaginous comments tended to cast the court before the

jury as bad tempered and nitpicking and himself as the victim of my supposed personal

displeasure with him.  I still find it incredible that any attorney would so blatantly and

deliberately seed the record with prejudice in this manner.

These various instances are merely representative of what transpired during the

---

[4]  Or to non-verbal conduct.  I was required to excuse the jury at one point during plaintiff's direct examination to admonish Mr. Brennan for making inappropriate, negative facial expressions in reaction to my evidentiary rulings.  (Tr. 840.)

trial of this case.  Mr. Brennan characterizes these and his other transgressions as "wretched little pieces,"[5] examining each individually and arguing that no particular specific instance is sufficient to show a prejudicial impact on the verdict.  Having lived through this trial, I reject this attempt to sanitize the record and minimize his misconduct and its concomitant synergistic effects.  Mr. Brennan's impudent conduct was not "*de minimis* in the context of the entire trial."  ***Pappas v. Middle Earth Condominium Association***, 963 F.2d 534, 540 (2nd Cir. 1992).  Simply recounting Mr. Brennan's myriad and varied transgressions of proper trial procedure and courtroom decorum does not adequately capture the pervasiveness and magnitude of his prejudicial behavior.  The cold transcript does not convey adequately the *Gestalt* of what transpired during this trial.  Repeatedly, by words, tone of voice, facial expressions, and body language, Mr. Brennan made manifest his most profound contempt for the court, the City and County of Denver, the Denver Fire Department,[6] opposing counsel, and ultimately, the entire legal system.  Mr. Brennan's unconcealed contempt for everyone involved in the proceeding, excepting only his client and his cause, was palpable.  He

---

[5] Thus both misquoting the case on which he purportedly relies, ***Koufakis***, 425 F.2d at 900 (cautioning against the inclination toward "*wrenching* little pieces of argument out of a long record") (emphasis added), and ignoring the context of the decision, wherein the appellate court found that "we cannot agree with [the trial judge's] conclusion" that no prejudice resulted from counsel's actions at trial, *id*.

[6] As just one example, Mr. Brennan had the temerity to personally insult in front of the jury Lt. Frank Hoffman, plaintiff's former superior and the person plaintiff clearly believes was most directly responsible for his termination.  Hoffman, who had once been friendly enough with plaintiff to invite plaintiff to his wedding, was nicknamed "Lurch" by his fellow firefighters.  In closing his cross-examination of Hoffman, Mr. Brennan issued this parting shot:

> Q: Okay.  Now, about your wedding.  Did you invite the Addams family?

(Tr. 1264.)  Such sophomoric and puerile taunts are more appropriate to a grade-school playground than a federal courtroom.

created and cultivated a courtroom milieu of contempt, exuding his hostility and enmity for the court and defendant.  He successfully converted the courtroom into his bully pulpit – but at the high cost of a fair trial.

His obsequious apologies for repeatedly flouting my rulings and the basic tenets of courtroom etiquette were unctuous acts of affectation that only served to make the court's enforcement of reasonable rules and procedures appear to the jurors as an impediment to the truth.[7]  *See McEnrue v. New Jersey Transit Rail Operations, Inc.*, 1993 U.S. Dist. LEXIS 15528 at *35-38 (D.N.J. Sept. 30, 1993) (counsel's prejudicial conduct during trial served, *inter alia*, to "plant[] in the jury's minds . . . that the Federal Rules of Evidence were inconvenient devices to conceal the truth"); *Ballarini v. Clark Equipment Co.*, 841 F.Supp. 662, 667 (E.D. Pa. 1993) (effect of counsel's prejudicial misconduct was to improperly "place the Court, in the eyes of the jury, into what amounted to an adversarial position"), *aff'd*, 96 F.3d 1431 (3rd Cir. 1996).  In fact, however, it was Mr. Brennan's unrestrained contumelious and insolent behavior that impeded the search for truth in this trial.

Although I issued curative instructions on numerous occasions, I have no confidence that my admonitions were sufficient to ameliorate the prejudicial impact of such a thoroughgoing and pertinacious campaign.  "[T]he bench and bar are both aware that cautionary instructions are effective only up to a certain point. . . . [A]fter repeated exposure of a jury to prejudicial information, . . . cautionary instructions will

_____

[7] Counsel's purported contrition was mere assentation in disguise. It was neither credible nor cogent.

9

have little, if any, effect in eliminating the prejudicial harm." ***O'Rear v. Fruehauf Corp.***, 554 F.2d 1304, 1309 (5th Cir. 1977).  Stated differently, "you can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good." ***Id.*** (citation and internal quotation mark and brackets omitted).  ***See also Koufakis***, 425 F.2d at 904; ***Draper v. Airco, Inc.***, 580 F.2d 91, 96-97 (3rd Cir. 1978); ***Hopson***, 190 F.R.D. at 122-23.

Nor is it any answer to the overwhelming effect of such prejudicial conduct to argue, as Mr. Brennan does, that defendant waived its right to complain by failing to object at every instance where objection was warranted.[8]  "Rules of practice and procedure are devised to promote the ends of justice, not to defeat them  . . . .  Orderly rules of procedure do not require sacrifice of the rules of fundamental justice." ***Hormel v. Helvering***, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).  This court retains the power, even in the absence of a contemporaneous objection, to correct error in "rare instances where it appears that a verdict was the result of passion aroused through extreme argument which clearly stirred the resentment and aroused the prejudice of the jury even though no objection was made or exception taken at the time." ***Sill Corp. v. United States***, 343 F.2d 411, 421 (10th Cir.), ***cert. denied***, 86 S.Ct. 88 (1965).  Counsel's duty to conform his behavior to the fair boundaries of zealous advocacy does not turn on whether his opponent objects. ***Brownlee v. United Fidelity Life Insurance Co.***, 117 F.R.D. 383, 389 (S.D. Miss. 1987) ("[S]uccess . . . is not

---

[8]  Nor does defendant's failure to move for judgment as a matter of law under Rule 50(a) on the basis of attorney misconduct effect a waiver of its right to on that basis.  ***See Freund v. Nycomed Amersham***, 347 F.3d 752, 765 (9th Cir. 2003).

measured by how many improper remarks one can get away with before being objected to"), *aff'd*, 854 F.2d 1319 (5th Cir. 1988).  Nor should opposing counsel be required to object at every instance of misconduct when such instances are as numerous as they were in this case.  At some point, continuing to object itself becomes a source of potential prejudice to the opposing party.  *Fineman v. Armstrong World Industries, Inc.*, 774 F.Supp. 266, 272 (D.N.J. 1991), *aff'd in relevant part*, 980 F.2d 171 (3rd Cir. 1992), *cert. denied*, 113 S.Ct. 1285 (1993).

Although it should go without saying that the boorish and unprofessional antics employed in this trial are beneath the dignity with which members of the bar of this federal district are rightfully expected to conduct themselves, the relevant issue in determining the instant motion is whether such intractable behavior unfairly prejudiced the jury's verdict.  *Fineman*, 980 F.2d at 207.  Given the prevalence of Mr. Brennan's multifarious transgressions as partially recounted above, the nature of the evidence supporting plaintiff's age discrimination claim, the brevity of the jury's deliberations, and the content of the one and only question it asked, I am convinced that counsel's froward misbehavior unfairly prejudiced the jury's verdict.

The jury in this case was asked to consider two claims of age discrimination under the Age Discrimination in Employment Act – one related to termination and the other to failure to reinstate.  The evidence establishing that plaintiff was terminated on the basis of his age was far from compelling.[9]  Nevertheless, in less than three hours –

---

[9] Further, the viability of the failure to reinstate claim hinged on whether plaintiff's retirement was voluntary, which, in turn, depended on whether his termination was wrongful, i.e., age-based.

after seven and one-half days of trial –  the jury returned a verdict for plaintiff on all

issues: both age discrimination claims, the question of willfulness, and defendant's

affirmative defense of failure to mitigate.  In fact, it was clear that the deliberations on

the substantive issues were even more abbreviated because the jury's first and only

question, which was propounded one hour and twenty-five minutes after deliberations

began, asked, "May the jury award lawyers' fees?"[10]  The suspicion that this inquiry

foreshadowed a plaintiff's verdict was confirmed a little more than an hour later, when

the final verdict was returned.  *See Spruill v. National Railroad Passenger Corp.*,

1995 WL 534273 at *9 (E.D. Pa. Sept. 5, 1995).  This closely spaced sequence of

events suggests the strong probability not only that the jury disregarded my admonition

to "not decide who you think should 'win' the case and then try to answer the questions"

(*see* **Jury Instructions**, **Instruction No. 31** [#159], filed June 29, 2007), but more to

the point, that its verdict was the result of impermissible passion and prejudice inflamed

by Mr. Brennan's unacceptable trial tactics.

I sincerely agree with Mr. Brennan that our federal courts should "not expect

---

[10]  Clearly, the jury sought to reward Mr. Brennan for his efforts, which also suggests a decision on an improper basis.  As noted by another district judge facing a similar set of circumstances:

> [T]his court recognizes that [plaintiff's attorney's] numerous spontaneous interruptions and outbursts in front of the jury could have caused another jury to loathe his behavior, thereby hindering plaintiff's chances of recovery in the action.  However, such conduct may have also endeared [plaintiff's attorney] to this jury if they interpreted his actions to be those of an impassioned attorney fighting tooth and nail for the rights of his injured clients.  The knife cuts both ways, and in this instance this court believes that . . . the jury was struck by the latter edge, along with defendant['s] [] right to a fair trial.

*McEnrue*, 1993 U.S. Dist. LEXIS 15528 at *57.

advocacy to be devoid of passion" and that every aggrieved party "is entitled to have someone speak with eloquence and compassion for their cause." *Draper*, 580 F.2d at 95.  But zealous advocacy is not a license to run roughshod over the search for truth that the concept is designed to ensure.  The overarching goal of our adversarial legal system is "a reasoned and reasonable search for justice between the parties." *Koufakis*, 425 F.2d at 901. This estimable aim should not suffer the ignominy of counsel's disgraceful conduct in the name of eloquence and compassion. What happened here should not be permitted to eviscerate our system's seminal purpose under the banner of zealous advocacy.  "Too often a lawyer loses sight of his primary responsibility as an officer of the court.  While he must provide 'zealous advocacy' for his client's cause, we encourage this only as a means of achieving the court's ultimate goal, which is finding the truth."  *Polansky v. CNA Insurance Co.*, 852 F.2d 626, 632 (1st Cir. 1988).  *See also Steinle v. Warren*, 765 F.2d 95, 101 (7th Cir. 1985) (noting that an attorney "is an officer of the court and that his duty to the court is paramount, even to the interests of his client"); *Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 283 (5th Cir. 1975) ("[A]dvocacy is circumscribed both by an attorney's own professional responsibility and the court's obligation to provide the parties a fair trial."). Mr. Brennan's relentless, dishonorable conduct during this trial crossed that line so far and so frequently that I am convinced beyond question that the fairness of the trial was inquinated irreparably.

I emphasize that I do not overturn a verdict reached by a duly empaneled jury lightly or without profound regret.  As plaintiff himself acknowledged on the witness

13

stand, he has waited a long time to tell his story.  Now he must wait even longer.

Moreover, it is abundantly clear that Mr. Brennan fervently believes in the

righteousness of his client's case and has invested himself heavily in pursuing justice

on plaintiff's behalf.  However, instead of letting the justice of plaintiff's case speak for

itself, Mr. Brennan chose to decry and debase the very mechanisms through which he

sought relief.

## IV.  CONCLUSION

When an attorney oversteps the bounds of permissible advocacy to the extent

Mr. Brennan did here, justice is subverted, and the result cannot stand.  Counsel's

continual, contumacious conduct substantially influenced the verdict and denied the

defendant a fair trial.

**THEREFORE, IT IS ORDERED** as follows:

1.  That defendant's **Motion and Supporting Brief for New Trial Because of Attorney Misconduct** [#209], filed December 11, 2006, is **GRANTED**;

2.  That the **Judgment** [#203], entered November 28, 2006, is **VACATED**; and

3.  That all other motions currently pending in this case are **DENIED AS MOOT**, including, but not limited to

(a) defendant's **Motion To Alter or Amend Judgment and Supporting Brief** [#210], filed December 11, 2006;

(b) defendant's **Motion and Supporting Brief for Judgment as a Matter of Law** [#211], filed December 11, 2006;

(c) defendant's **Motion for Stay of Execution of Judgment** [#221], filed

14

January 12, 2007;

(d) **Plaintiff's Motion for Award of Attorney's Fees and Costs** [#232],

filed March 9, 2007; and

(e) **Defendant's Motion for Relief from Judgment of Reinstatement,**

**Pursuant to Fed.R.Civ.P. 60(b)(2) and 60(b)(6) and Renewed Motion for Stay of**

**Judgment of Reinstatement** [#237], filed June 7, 2007.

Dated September 27, 2007, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge