THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01067-MSK-CBS

WILLIAM R. CADORNA,

    Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, a municipal corporation,

    Defendant.

## DENVER'S MOTION TO DELAY RESETTING OF JURY TRIAL

Defendant, City and County of Denver, Colorado, by and through its attorneys, Christopher M.A. Lujan and Franklin A. Nachman, Assistant City Attorneys, move this Honorable Court to Delay the Resetting of the Jury Trial in this matter. In support of this Motion, Defendant states the following in furtherance of its request to postpone setting this matter for trial at this time.

### CERTIFICATION UNDER LOCAL RULE 7.1

On 11 September 2008 undersigned counsel spoke with opposing counsel Mark Brennan to ascertain his position in this matter. Plaintiff's counsel stated that he opposes the motion at this time. Having conferred with Plaintiff's counsel, Defendant files this Motion.

### INTRODUCTION

Simply because this case was tried once does not automatically indicate that this case is ready to be presented to a jury in the immediate future. The first trial ("Cadorna

I") brought out numerous facts from Plaintiff that Denver has never had the opportunity to adequately challenge. Further, the first trial also raised multiple legal issues that this Court, as opposed to a jury, should decide.

Since September 2007 when Honorable Judge Robert E. Blackburn granted Denver's Motion for a New Trial based on Attorney Misconduct (ECF No. 241), the parties have devoted their resources into fully briefing the post trial issues embedded in this case. The parties have also been engaged in arguing over Plaintiff's numerous requests calling for Judge Blackburn's recusal. Denver has spent its time during the last 11 months responding to Plaintiff's motions to reconsider the Order for a New Trial and fighting against Judge Blackburn's recusal. Denver has also had to defend against Plaintiff's motions for interlocutory appeal to the Tenth Circuit Court of Appeals. It would not have been appropriate during this time to file dispositive motions and other pleadings related to a retrial as it was unclear at the time *when* a new trial would be held or *if* Judge Blackburn would even be the jurist presiding over this matter.

Judge Blackburn's *sua sponte* decision to recuse himself and the subsequent transfer of the case means that now is the appropriate time to resolve trial issues. Denver seeks a postponement in setting a new trial date to allow for it to obtain discovery as it relates to Plaintiff's duty to mitigate damages since the first trial as well as other questions raised during the first trial. Denver also seeks a delay in scheduling a new trial so that it may adequately have time to file dispositive motions to resolve the numerous legal questions that should be adjudicated, and were not previously addressed, before trial begins.

2

One legal question that was never resolved in Cadorna I was the issue of whether or not ADEA's safe harbor provision, 29 U.S.C. §623 (j), exempts Denver from liability in its decision to decline Plaintiff's reinstatement to the Denver Fire Department. Although this issue was raised by Denver in its previous summary judgment motion, Judge Blackburn never ruled on this issue. Denver seeks a brief postponement to fully brief the Court and receive a ruling on this issue.

Contrary to conventional wisdom, the first trial raised many more legal issues than it resolved. In the interest of guaranteeing a fair trial for the parties while maintaining respect for the judicial economy of this Court and the time that we will ultimately ask jurors to sacrifice, Denver respectfully requests this Court to delay resetting the trial a short time so that all necessary discovery may be obtained and all legal issues may be adequately briefed.

## LEGAL ARGUMENT

### I. Denver Seeks a Brief Postponement in Scheduling a New Trial to Obtain Discovery Relevant to Plaintiff's Damages After Cadorna I

At trial, Denver bears the burden of demonstrating Plaintiff's failure to mitigate his damages after being terminated from the Denver Fire Department in January, 2003. *Eastman Kodak Co. v. Westway Motor Freight, Inc.,* 949 F.2d 317 (10th Cir. 1991). Denver seeks a brief delay in setting a new trial date to afford it the opportunity to obtain the discovery necessary to adequately question Plaintiff or other witnesses during a new trial.

Denver seeks discovery as it pertains to two separate categories of information: 1) discovery in connection with Plaintiff's settlement with the Safeway Corporation in case 04-cv-01434-REB-CBS in early 2006; and 2) discovery in connection with Plaintiff's employment and financial information since the jury's verdict in Cadorna I in June 2006. The evidence pertaining to Plaintiff's settlement with the Safeway Corporation is relevant evidence that the Plaintiff has failed to mitigate his damages. The settlement from Safeway will partially explain why Plaintiff bypassed all reasonable efforts to mitigate his damages since his termination from the Denver Fire Department.

Further, this discovery is relevant to rebut the claims made by Plaintiff in Cadorna I that he is broke and penniless. The discovery from the Safeway settlement is relevant for the jurors to determine if damages are appropriate and to weigh the Plaintiff's credibility which is an issue solely within the province of the jury. *U.S. v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006) ("The juror's role is to evaluate witness credibility.")

In an effort to remove this issue as an obstacle for setting a new trial, Denver has formally requested Plaintiff's counsel to provide discovery pertaining to the settlement with Safeway Corporation. In citing to Plaintiff's continuing duty to supplement discovery under Fed. R. Civ. P. 26 (e), Denver has requested the production of discovery by 10 September 2008 so as to eliminate this as a ground for postponing the setting of a new trial. Plaintiff's counsel has indicated to Defendant that he will not disclose this information so Denver is now forced to obtain this information through a Motion to

4

Compel. Plaintiff's refusal to comply with his disclosure duties under the Federal Rules of Civil Procedure will result in another legal issue that this Court will have to resolve.

The second category of discovery Denver seeks is information pertaining to any employment and income Plaintiff has earned since the June 2006 trial. Because Denver must prove that Plaintiff failed to mitigate his damages from January 2003 to the present, it is proper for Denver in a new trial to examine Plaintiff on this issue and for the jury to consider the efforts that Plaintiff has made to lessen his damages since he was terminated in 2003. *Eastman Kodak Co. v. Westway Motor Freight, Inc.*, 949 F.2d 317 (10th Cir. 1991). As is true with the Safeway discovery, Denver has made a formal request for this information and has not received a response since first requesting this information on 26 August 2008.

One final issue inherent in obtaining discovery is procuring the witnesses necessary to lay proper foundation for the admissibility of this evidence at trial. Reviewing the discovery, identifying the witnesses needed for trial, and trying to procure their presence at trial takes time and this is yet another reason to delay setting a trial date.[1] Denver, in satisfying its burden of proving that Plaintiff failed to mitigate his damages, wants to endorse a labor market expert witness who will base his testimony and opinion largely on the discovery produced. This expert would analyze the Plaintiff's efforts to lessen his damages from 2003 to the present.

---

[1] The process of identifying and subpoenaing foundation witnesses for a new trial would be unnecessary if Plaintiff's counsel is willing to stipulate to the facts contained in this discovery. Because past history illustrates that stipulation is unlikely, time will be needed to procure these witnesses.

Because the information Denver seeks is material to issues that will be presented at the second trial and it will take time to obtain this discovery for use in a second trial, Denver believes that postponing the scheduling of a new trial is necessary.

### II. Denver Seeks a Brief Postponement in Scheduling a New Trial in Order For This Court to Resolve Legal Issues Before a Jury is Seated

A short delay in scheduling a new trial is appropriate to decide the numerous legal issues that should be settled before a jury is empanelled. There are three categories of legal issues that require resolution: 1) a partial motion of summary judgment by Denver based on ADEA's "safe harbor" provision (29 U.S.C. §623 (j)) that shields the Defendant's reliance on Colorado's retirement statute from liability; 2) whether the expert witnesses called by Plaintiff in Cadorna I meet the requirements required for expert witness testimony under FRE 702 and the cases under the *Daubert* progeny; and 3) numerous motions in limine which Denver will file to help guide the parties on how to treat issues raised in Cadorna I during a retrial. Because of the various legal issues raised in Cadorna I, Denver respectfully requests a briefing schedule well in advance of trial so that the parties can adequately brief these issues; that the Court will have adequate time to rule on these issues; and the parties can prepare their presentations for trial accordingly.

#### A. Denver's Motion for Summary Judgment

One prong of Plaintiff's age discrimination claim is his failure to reinstate claim.

(Second Amended Complaint, ¶¶ 131-134). Denver did not reinstate Plaintiff because he filed for and received a retirement.[2] The law governing retirements for firefighters is contained in Colorado Revised Statute §31-30.5-705 (5). This statute prohibits the reexamination – and subsequent reinstatement – of a firefighter who is has exceeded age 50. *Id.* Further, this statute also prohibits the reexamination of a firefighter who has "completed twenty-five years of active duty in the department..." *Id.* Denver's firefighters have received pension benefits from a plan that has been in effect since 1979. When Plaintiff attempted to obtain reinstatement by appealing his dismissal to an administrative hearing officer, the hearing officer ruled that the state statute precluded the reinstatement of Plaintiff as he retired because of a disability. (Ex. No. 1, Hearing Officer Findings and Order, pp. 21-22).

ADEA contains a safe harbor provision that exempts state disability and pension plans created before 03 March 1983 from liability. 29 U.S.C. §623 (j) (1) (A). Because Denver's pension plan is covered by a state statute that is in turn exempted from liability under federal law and since there are no genuine disputes of material facts on this issue, summary judgment is appropriate.

Although Denver raised this issue in its first summary judgment motion (ECF No. 81), the Court did not explicitly rule on this issue. Despite denying Denver's summary judgment motion on the ADEA claim because material facts existed as to the pretext issue, the Court never ruled on ADEA's safe harbor exemption of Colorado's statute

---

[2] Plaintiff first received a retirement based on his age (over 50) and his years of service with the Department (over 25 years). (See Cadorna I Final Pretrial Order, ECF. No. 95, pp. 20-21). Plaintiff later converted his age and service retirement to one based on a disability due to hearing problems he experienced 32 years ago. *Id.*

7

from liability. The closest that the Court came to ruling on this issue was when it wrote, "[g]iven this 'safe harbor' provision, I cannot accept plaintiff's argument that defendant's reliance thereon is a *per se* violation of the ADEA." (Order Re: Cross-Motions for Summary Judgment 08 June 2006, p. 10, fn. 8, ECF. No. 110). Because the Court never ruled on this issue before Cadorna I, this question is ripe for adjudication now.

Resolving this issue through summary judgment would serve the interests of judicial economy and allow the jury to focus its efforts towards deciding one legal claim (Plaintiff's termination claim) as opposed to two. Motions for partial summary judgment are appropriate when, if granted, they will "significantly reduce" "the scope of the evidence to be presented at trial." (MSK Civ. Practice Standard V.I.3 (3)). If Denver is successful in obtaining summary judgment on this issue, then approximately half of the evidence presented in Cadorna I will become irrelevant at retrial.

Denver seeks a short delay in scheduling a trial so that it can fully brief the Court on this issue. Adjudicating this question before a new trial is scheduled will direct the parties on the legal claims that need to be addressed at retrial.

### B. The Admissibility of Expert Testimony Under FRE 702 and the *Daubert* Progeny

On two different occasions in Cadorna I, two of Plaintiff's witnesses were accepted by the Court as expert witnesses. The Court declared Ida Roberts and David Schuetz expert witnesses at trial despite the fact that Plaintiff never identified these witnesses as experts pursuant to Fed.R.Civ.P. 26 (a) (2) and never disclosed the expert reports that this rule requires. Further, Plaintiff never identified these witnesses as

8

experts in the Final Pretrial Order. In suddenly declaring Ms. Roberts as an expert on Denver's retirement program, the Court ruled "it appears that this witness is testifying as an expert witness." (Ex. No. 2, Trial Transcript 21 June 2006, p. 676). In evaluating Mr. Schuetz's suitability as an expert in security and criminal investigations, the Court ruled that the witness' knowledge satisfies the requisites for admissibility under FRE 702. (Ex. No. 3, Trial Transcript 26 June 2006, pp. 1103-1104).

Courts serve as the "gatekeeper" for determining the admissibility of expert testimony at trial. *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1223 (10th Cir. 2003) (Although a district court has discretion on *how* it conducts the "gatekeeper" function, "it has no discretion to avoid performing the gatekeeping function.") The surprising endorsement of these witnesses as experts in Cadorna I deprived Denver of the opportunity to adequately contest these endorsements under FRE 702 and the *Daubert* line of cases on this issue. Denver requests the opportunity to fully contest these endorsements before the case is retried to a jury.

As indicated above, Denver seeks leave to call a labor market expert to testify about Plaintiff's failure to mitigate his damages. More time is needed for Denver to first identify an expert qualified to proffer testimony in this area, receive discovery from Plaintiff for the expert to adequately render an opinion, and still comply with its disclosure requirements to Plaintiff under Fed.R.Civ.P. 26 (a) (2).

### III. Motions in Limine to Determine Legal Issues Raised in Cadorna I

Several questions raised for the first time in Cadorna I should be resolved before a new trial commences. The appropriate vehicles for resolving these legal issues are for

the parties to file motions in limine. A resolution of these issues well in advance of trial will allow for the parties to tailor their presentations to the jury in accordance with the Court's direction.

If permitted by this Court, Denver will file a motion in limine prohibiting Plaintiff from mentioning the fact that a previous jury trial was held and the verdict from Cadorna I to a new jury.[3] Denver suspects that Plaintiff will repeat the outcome of Cadorna I to the jury early and often in an attempt to prejudice the Defendant to the jury. Because the mention of the earlier trial and verdict could impermissibly prejudice the jury and result in a mistrial – an outcome neither party desires – it is important for the parties to know well in advance about what is permissible at trial.

Should the Court permit Denver to file a motion in limine, Denver will also move for an order allowing Denver's witnesses to testify about the contents of the Civil Service Commission Hearing Officer's decision to the jury. During Cadorna I the trial court, relying on FRE 702's restrictions on expert witness testimony, precluded Denver's witnesses from testifying about the hearing officer's decision denying Plaintiff's reinstatement. (Ex. No. 4, Trial Transcript, 28 June 2006, pp. 1451 - 1452). A ruling on this legal issue involving a critical exhibit in advance of trial will better direct the parties on how to proceed at trial.

---

[3] Denver is mindful that the decision may have already been made to deny it the opportunity to brief the Court on these issues. A review of the Court's Practice Standards and its reference to the Trial Preparation Order indicate that there is no language allowing for the parties to file dispositive motions or motions in limine. If this omission by the Court is a signal that it will not allow for the parties to file these motions, Denver respectfully requests the reconsideration of this decision based on the reasons outlined in this motion.

Denver did not have an opportunity to file motions in limine in Cadorna I due to Judge Blackburn's open reluctance to consider these motions in advance of trial. Judge Blackburn's advisement that motions in limine "are discouraged" and only accepted "[i]n...extremely limited circumstances" clearly discourages the resolution of important evidentiary issues in advance of trial. (REB Civ. Practice Standard V.F). Denver seeks a brief postponement in setting a trial date for the opportunity to brief the Court on these issues.

## CONCLUSION

When the parties last appeared at the law and motion hearing on 15 August 2008, this Court expressed a strong position that this case is postured to proceed to trial immediately. Denver respectfully submits that this case is not appropriately postured to proceed to trial until post Cadorna I discovery is produced and several legal issues are resolved. For the first time since the verdict was rendered in June 2006, the parties can brief the Court on trial issues free from the constraints of post trial procedure and Plaintiff's numerous attempts to recuse the trial judge.

Most importantly, a brief delay in setting this matter for trial will serve the interests of judicial economy, reduce the likelihood of wasting the jury's time by reducing the issues they will be tasked to consider, and provide the parties with a fair opportunity to present its case to the jury. For these reasons, Denver moves for the Court to grant this motion in its entirety.

Respectfully submitted,

s/ Christopher M.A. Lujan
Christopher M.A. Lujan
Franklin A. Nachman
Assistant City Attorneys
Denver City Attorney's Office
201 W. Colfax Ave., Dept. 1108
Denver, Colorado 80202
Telephone:  (720) 913-3100
Facsimile:   (720) 913-3182
E-mail:  dlefiling.litigation@ci.denver.co.us
*Attorneys for Defendant City and County of Denver*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September 2008, I electronically filed the foregoing **DENVER'S MOTION TO DELAY RESETTING OF JURY TRIAL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Mark E. Brennan
markebrennanpc@yahoo.com

and I hereby certify that I have mailed the document to the following non CM/ECF participants in the manner indicated by the non-participant's name:

e-mail to:

Manager Alvin LaCabe, Jr.
Manager of Safety
Department of Safety

Chief Nick Nuanes
Department of Safety
Denver Fire Department

s/ Raquel R. Trujillo
Raquel R. Trujillo, Legal Secretary
Denver City Attorney's Office

12